**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DAVID FRANKLIN BRASS, SR.,**

        **Plaintiff,**

**v.**                                  **Case No.  8:13-cv-1458-T-27TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

      Plaintiff was fifty-three years (53) old at the time of his administrative hearing.  He stands 5 feet 9 inches and weighed 215 pounds.  Plaintiff has a ninth-grade education.  Plaintiff reported past relevant work as a concrete laborer, maintenance worker, warehouse worker, electric services laborer, and foreman.  Plaintiff applied for disability benefits and Supplemental Security Income payments in May 2010, alleging disability as of December 19,

2009,[1] by reason of chronic obstructive pulmonary disease (COPD), restless leg syndrome (RLS), diabetes, high blood pressure, [high] cholesterol, and heart problems.  Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (ALJ).  The Plaintiff was represented at the hearing by counsel and testified on his own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified he was unable to work due to heart problems, emphysema and COPD, kidney disease, high blood pressure, diabetes, heartburn and an esophageal hernia.  Plaintiff testified he had open heart surgery in September 2009 and stent placement in November 2010.  He stated that he has stage three kidney failure and has to watch his diet; if it gets to stage six he will require dialysis.  He uses three inhalers for his pulmonary problems and they help.  Plaintiff takes medication for his kidney disease, high blood pressure, diabetes, esophageal hernia.  The medication causes drowsiness and he is tired all of the time.  Plaintiff also testified to hip and back pain.  He went to [physical] therapy for six weeks.  He stated that he does not take medication for his back/hip pain, but may need surgery.  Plaintiff also complained of "very bad" anxiety.  He has had it for about two years. It affects his ability to be around a lot of people and he no longer associates with friends.  It also makes him get angry with his grandchildren.  Plaintiff has trouble sleeping and uses a CPAP machine at night.

---

[1]The application for SSI alleges an onset date of August 1, 2009.  (R. 121).

Plaintiff testified to limited daily activities.  He tries to help with the housework, but he is out of breath after about five minutes.  His daughter-in-law does almost all of the household work.  Plaintiff dresses himself, but has problems with putting on his socks and shoes due to lower back and right leg pain.  He described a typical day as watching television and walking in the yard.  He cannot do yard work and is not supposed to be in direct heat for more than thirty minutes due to the medication he takes.

Plaintiff also testified to limited physical abilities.  Plaintiff can sit for about ten to fifteen minutes before he has to get up.  He can walk about ten minutes before he has to sit down.  It takes about an hour for him to recover from that.  He walks to his mailbox everyday, which is about a football field or so, but he has to stop.  His cardiologist told him to walk as much as possible.  He can stand for about five to ten minutes, but is up and down all the time due to pain.  He can lift and carry around five pounds.[2]  It hurts him to bend at the waist and pick up something.  Plaintiff lies down during the day and sometimes naps for an hour or two.  Plaintiff uses a cane that he bought for himself.

Plaintiff last worked in December 2009.  At that time, he worked in construction, where he built forms for concrete, poured forms and finished concrete, and assisted a carpenter.  He was having blackouts at work and was laid off prior to his heart surgery.  Previously, Plaintiff worked for several electric companies.  He started out as a laborer, digging trenches.  He later was promoted to a foreman and he supervised a two-man crew laying underground cable.  He also loaded and unloaded things at a warehouse.  (R. 33-53).

---

[2]On questioning by the ALJ, Plaintiff stated he can carry a gallon or maybe two gallons of milk for about twenty or thirty feet, but would not be able to carry it all day.  (R. 53).

3

The ALJ next took testimony from Joyce Courtright, a vocational expert (VE). According to the VE, Plaintiff's skills from underground electrical installation and cable installation would provide a very limited transfer to light work in electrical bench repair.  On a hypothetical question which assumed a person of Plaintiff's age, education and work history capable of performing a limited range of light exertional work, but no climbing ladders or scaffolds; only occasional balancing; no crawling; avoiding moving machinery; no exposure to unprotected heights or hazards; no jobs requiring math skills; avoiding concentrated exposures to heat and to cold; avoiding dust, fumes, gases, poorly ventilated areas; and requiring work reduced to simple, repetitive, routine tasks with moderate limitations with peers and supervisors, but able to perform three to four step tasks with good understanding and persistence, able to maintain attention and concentration, and cope with moderate stress, the VE testified that none of Plaintiff's past relevant work would be available.  However, other jobs such as small products assembler, packager/heat sealer, and injection molding machine tending could be performed.  On questioning by Plaintiff's counsel, the VE testified that full-time competitive jobs would not be available if an individual was off task for one third of the work day due to napping a couple of times a day for about sixty minutes total.  (R. 55-58).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of January 20, 2012, the ALJ determined that while Plaintiff has severe impairments related to severe obstructive sleep apnea, COPD, hypertension, coronary

4

artery disease, status post cardiovascular bypass grafting, RLS, gastroesophageal reflux disease, diabetes mellitus, and past history of cocaine use in remission, he nonetheless had the residual functional capacity to perform a limited range of light exertional work.  Upon this finding and the VE's testimony, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 14-25).  The Appeals Council considered additional evidence and denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and

5

demonstrate that she has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions.  *Moore*

*v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve

conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled.  *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the

Commissioner are supported by substantial evidence and whether the correct legal standards

were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002);

*McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises fives claims on this appeal.  As stated by the Plaintiff, they are as

follows:

(1)    The finding by the [ALJ] that Claimant could perform light work was based
       on an application of an incorrect standard of law;

(2)    The [ALJ] failed to adhere to the determination of the VE;

6

(3)     The ALJ erred in not finding disability in accordance with the Grids;

(4)     The ALJ committed reversible error at steps 3, 4, & 5 of the sequential evaluation by failing to consider all of Claimant's impairments; and

(5)     The hearing decision was not supported by substantial evidence in the record.

In light of these errors, Plaintiff urges that the Commissioner's decision should be reversed and remanded for an award of benefits, or, in the alternative, his case should be remanded for further administrative proceedings.  (Doc. 13).

By his first claim, Plaintiff argues there is not substantial evidence in the record that supports the ALJ's finding that he can (1) lift up to twenty pounds and carry ten pounds frequently, and (2) perform the standing and walking requirements of light work.  Thus, according to Plaintiff, the ALJ's residual functional capacity (RFC) finding is not supported by the findings of any of the examining or treating sources.  (Doc. 13 at 3-4).

The Commissioner counters that Plaintiff's summary assertions are without merit because the ALJ's RFC finding is supported by substantial evidence.  In particular, the opinion of David Guttman, M.D., the nonexamining, state agency doctor who reviewed Plaintiff's file on request of the SSA on August 30, 2010, opined that Plaintiff retained the ability to lift twenty pounds occasionally and ten pounds frequently and sit/stand/walk for about six hours each in an eight-hour day.  This opinion was accorded "great weight" secondary to the consistency of the medical record and lack of other restrictions given by any other doctor.  Further, the ALJ gave significant weight to the opinions of the consulting psychologist and state mental health consultant, and gave great weight to the treatment evidence from Drs. Max F. Rattes, Rafael Martinez, Keith Kapatkin, Yawer Nensey, and Dana

E. Perrin, none of whom identified any functional limitations.  Moreover, Plaintiff does not challenge these conclusions.  (Doc. 15 at 4-6).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Lewis*, 125 F.3d at 1440.  In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Here, the ALJ found that Plaintiff retained the RFC to perform a limited range of light exertional work.[3]  As urged by the Commissioner, that finding is supported by the RFC opinion of Dr. Guttman, who opined that Plaintiff could perform the lifting and sitting/standing/walking requirements of light exertional work.  *See* (R. 470) (assessing ability to occasionally lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk for a total of six hours each out of an eight-hour day).  While Plaintiff  Orlando (ORL)complains that the ALJ's RFC is not supported by the reports of treating or examining doctors, he fails to explain this contention.  Significantly, the ALJ gave significant weight to the treatment notes of Drs. Rattes (cardiologist), Martinez (pulmonologist), Nensey

---

[3]As noted by Plaintiff, light work is defined as work that involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. It may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities.  20 C.F.R. §§ 404.1567(b), 416.967(b).

(gastroenterologist), and Perrin (primary care) (R. 21-22), and none of these treating doctors provided opinions on Plaintiff's functional capacity.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) (noting that "a lack of physical restrictions constitutes substantial evidence for a finding of non-disability") (citation omitted).  While the report of an nonexamining physician, when contrary to those of treating physicians, is entitled to little weight and standing alone does not constitute substantial evidence on which to base an administrative decision, *see Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir.1987)), an ALJ may rely on the opinion of nonexamining sources when it does not conflict with those of treating sources.  *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).  On thorough review of the entirety of the medical record, I find that such is the case here.  Dr. Guttman's opinion on Plaintiff's ability to lift, carry, sit, stand, and walk is not inconsistent with the opinions of Plaintiff's treating doctors, and Plaintiff makes no attempt to demonstrate otherwise.  Nor does he demonstrate from the medical record any error in the ALJ's RFC assessment.

By his second claim, Plaintiff contends the ALJ improperly rejected testimony of the VE and that the VE's testimony on which the ALJ did rely was based on a hypothetical question that did not include all of his impairments/symptoms/limitations.  Specifically, Plaintiff contends that the record supports his allegations of severe heartburn, breathing limitations, constant drowsiness and fatigue, and daytime somnolence, all of which result in a limitation for being off task for up to one-third of the day.  The ALJ's hypothetical did not assume such a limitation.  On a second hypothetical, posed by counsel, which did assume such a limitation, the VE opined that no work would be available.  Thus, Plaintiff argues that the

ALJ erred rejecting the latter testimony and he urges that this error warrants a reversal with an award of benefits.  (Doc. 13 at 4-7).

The Commissioner counters that Plaintiff's claim is without merit because the ALJ rejected that particular limitation and there is no requirement for the hypothetical question to include unsubstantiated complaints.  Thus, the Commissioner maintains that the ALJ posed a hypothetical question to the VE that incorporated all of Plaintiff's limitations and appropriately relied upon the same for decision.  (Doc. 15 at 6-8).

Plaintiff is correct that case law dictates that the ALJ pose hypothetical questions to a vocational expert which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)).  Where the hypothetical question posed to a VE does not comprehensively describe all of the claimant's impairments and limitations, the decision of the ALJ, based significantly on the VE's testimony, is unsupported by substantial evidence.  *Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).  Nonetheless, Plaintiff's claim is without merit.

Here, Plaintiff fails to point to any record support for his assertion that his heartburn, breathing problems, drowsiness and fatigue, and daytime somnolence are of such a severity that he would be off task for up to one-third of the day.  Moreover, a review of the medical record reveals that the ALJ properly rejected that allegation as unsupported.  Specifically, the ALJ noted that Plaintiff's symptoms related to GERD (heartburn) and COPD (shortness of

breath) improved with medication and were under good control (R. 22-23).[4]  *See, e.g.,* (R.

329, 343, 345, 460, 536, 538, 556, 560, 562, 565, 575, 604, 606, 625, 720, 723, 746).  The

ALJ also noted that Plaintiff was no longer sleepy during the day when using his CPAP

machine on a daily basis and his fatigue improved subsequent to his heart surgery and stent

placement (R. 23).[5]  *See, e.g.,* (329, 384, 396, 504, 510, 516, 522, 556, 635, 711).  Thus,

because the ALJ provided adequate reasons for discounting that limitation, he did not err by

not including it in the hypothetical or by relying upon his hypothetical to the VE.  *See*

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

By his third claim, Plaintiff contends the ALJ erred by not finding him disabled upon

application of the grids.  In particular, Plaintiff argues that given his age, education and work

experience and his limitation for sedentary work, the ALJ should have applied the applicable

grid rules for sedentary work, i.e., rules 201.09 or 201.10.  By these rules, a finding of

disabled is directed.  (Doc. 13 at 7-8).

---

[4]Regarding GERD, Plaintiff was hospitalized in August 2011 for vomiting and abdominal pain.  He responded well to the treatment and was feeling good after the hospitalization.  (R. 575).  Dr. Nensey treated Plaintiff for GERD on five occasions from June 2011 to December 2011.  In October and December 2011, it was noted to Plaintiff's GERD was under "excellent control."  (R. 720, 746).

Regarding COPD, Dr. Martinez treated Plaintiff on at least five occasions from November 2009 to May 17, 2011.  (R. 328-29, 331-33, 477-78, 556).  Spirometric values were normal and his COPD was stage 0.  (R. 333).  Plaintiff initially reported excessive daytime sleepiness, (R. 331), but on subsequent visits he denied daytime sleepiness with nightly use of a CPAP machine.  (R. 329, 556).  Drs. Perrin and Nensey repeatedly documented an absence of shortness of breath.  (R. 343, 345, 460, 536, 538, 560, 562, 565, 604, 606, 625, 723).

[5]As noted above, Plaintiff denied daytime sleepiness and Dr. Martinez noted that Plaintiff's daytime symptoms improved with CPAP use nightly.  (R. 329, 556).  As for feeling tired, Dr. Rattes noted on multiple occasions that Plaintiff was not feeling tired after his heart surgery.  (R. 384, 396, 504, 510, 516, 522, 635, 711).

The Commissioner initially notes that Plaintiff's nonexertional limitations precluded use of the grids for decision.  Moreover, she counters that Plaintiff's argument fails because it is predicated on an RFC for no more than sedentary work.  Here, the ALJ correctly determined that Plaintiff retained the RFC to perform light work and substantial evidence supports that determination.  Thus, the Commissioner contends that the ALJ did not error by failing to consult the grid rules for sedentary work.  (Doc. 15 at 8-9).

As urged by the Commissioner, this claim is without merit.  First, as the ALJ recognized, in the circumstances of this case, the grids could be used as a framework for decision only.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1242 ("'[e]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.'") (quoting *Frances v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)).  In any event, as discussed above, the ALJ's RFC finding for a limited range of light exertional work is supported by the medical record and Plaintiff fails to demonstrate otherwise.  Thus, even if the grids could be used for decision in this case, the ALJ was not obliged to consult the grid rules for sedentary exertional work prior to seeking vocational testimony.

By his fourth claim, Plaintiff faults the ALJ for not considering his joint pain, primarily back and hip pain.  Plaintiff contends the medical record and his testimony reveal lower back and hip pain which should have been considered by the ALJ.  In support, Plaintiff points to evidence of prescription pain medication, i.e., Darvocet; multiple complaints to doctors of joint pain and back pain; and the finding of radicular syndrome in his lower legs.

12

According to Plaintiff, his back and hip pain resulted in difficulty performing postural activities.  Plaintiff urges that the ALJ's failure to consider his back and hip pain calls into question the ALJ's findings at steps three, four, and five of the sequential evaluation.  (Doc. 13 at 8-11).

The Commissioner counters that the ALJ explicitly considered Plaintiff's complaints of joint, hip, and back pain when reviewing the medical record.  The Commissioner also contends that the decision shows that the ALJ properly considered the combined effects of Plaintiff's impairments at step three and considered the same when assessing Plaintiff's RFC in connection with steps four and five of the sequential evaluation.  (Doc. 15 at 9-10).

The Social Security Regulations set forth a five-step sequential evaluation process the ALJ must follow in determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  Under this five-step sequential evaluation, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the RFC to perform his past relevant work; and (5) if not, whether, in light of the claimant's age, education and work experience, the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The burden is on the claimant to prove the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step.  *Jones v. Apfel,* 190 F.3d at 1228.

As an initial matter, Plaintiff's broad complaint that the ALJ did not consider his back and hip pain is simply incorrect.  Review of the decision reveals that the ALJ fully considered Plaintiff's alleged back and hip pain.  Specifically, the ALJ noted that Dr. Perrin treated Plaintiff for joint pain; Plaintiff told the consulting psychologist that he had back pain all the time; Plaintiff complained to Dr. Rattes that he had groin and low back pain; Plaintiff complained to Dr. Perrin that he had right-sided pain in the back that radiates into his hip and leg; an x-ray of the lumbar spine showed degenerative changes at L1-L2; Dr. Perrin diagnosed back pain and made a neurosurgery referral; and Plaintiff used a cane for approximately two months due to complaints of back pain.  (R. 18-20, 22).  Thus, Plaintiff's general complaint in this regard is unsupported and contrary to a plain reading of the decision.

As for the ALJ's consideration of Plaintiff's back and hip pain throughout the sequential evaluation, I find no error.  At step two of the sequential evaluation, the ALJ did not find that Plaintiff's back, hip, or joint constituted severe impairments.[6]  Plaintiff demonstrates no error in this.  And, in any event, given that the ALJ found several other impairments to be severe at this step and he continued throughout the remaining steps of the evaluation, Plaintiff shows no error meriting relief.  *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step

---

[6]While Plaintiff did not allege back, hip, or joint pain as conditions which limited his ability to work at the time he applied for benefits, in a supplemental form submitted to the SSA in August 2010, Plaintiff reported back pain and prescription pain medication.  *See* (R. 149, 192).

14

two."); *see also Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010)

("Even if the ALJ erred in not indicating whether [a condition] was a severe impairment, the

error was harmless because the ALJ concluded that [claimant] had a severe impairment: and

that finding is all that step two requires."). Similarly, there is no error at step three in this

regard. At step three, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed impairments. In

this Circuit, such a finding itself evidences adequate consideration of the combined effect of a

claimant's impairments. Here, given the express discussion of Plaintiff's alleged back and hip

pain, I am obliged to conclude it was fairly considered at step three. *See Wilson*, 284 F.3d at

1224-25 (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir.

1991)). The decision also reflects that the ALJ adequately considered Plaintiff's back and hip

pain at steps four and five. The ALJ addressed Plaintiff's complaint of back pain at step four.

Thus, he expressly referenced the medical evidence and Plaintiff's subjective complaints of

back pain and in assessing Plaintiff's residual functional capacity.[7] As addressed below, the

---

[7]The record on Plaintiff's back and hip pain is a mixed bag. The bulk of records addressing this are from Dr. Perrin. Degenerative changes at L1-L2 were demonstrated by x-ray of the lumbar spine. Dr. Perrin ordered physical therapy and prescribed pain medication for a short time. At some point, Dr. Perrin quit prescribing pain medication and told Plaintiff to locate a pain management provider and pay out of pocket. (R. 457, 537). There is no evidence that he did so, and Plaintiff was not taking prescription pain medication at the time of the hearing. Only two of Dr. Perrin's treatment notes include findings on examination pertaining to Plaintiff's back and hip pain. (R. 535, 723-24). She noted that Plaintiff failed physical therapy and she was referring him to Dr. Rakesh Kumar, a neurosurgeon. (R. 724). The record does not include physical therapy notes or notes from Dr. Kumar. Plaintiff testified at hearing that he was to see the neurosurgeon in January 2012. The ALJ issued his decision on January 20, 2012, and the Appeals Council issued decision in May 2013. Plaintiff did not submit records from Dr. Kumar to the ALJ, the Appeals Council, or this Court.
    Certain treatment notes from Drs. Nensey and Rattes also addressed Plaintiff's back

ALJ provided sufficient reasons for discounting Plaintiff's subjective complaints.  And, significantly, no doctor imposed any limitations on Plaintiff's functional capacity as a result of back pain.  Finally, because the ALJ's determinations at step four are supported by the record, he was not obligated to include any specific back or hip pain related limitations in the hypothetical question to the VE at step five of the sequential evaluation.

By his fifth claim, Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.  In particular, Plaintiff argues that his subjective allegations should have been credited because his multiple joint pain, lumbar radiculopathy, and degenerative joint disease of the lumbar spine, and right thigh satisfy this Circuit's "pain standard."  The conditions were diagnosed as early as February 2010, and diagnostic tests confirmed degenerative joint disease of the lumbar spine.  Additionally, Plaintiff summarily asserts that his "allegations of pain, physical limitations and other symptoms of drowsiness, fatigue, severe heartburn from GERD, breathing difficulty and sleeping problems should have been given significant weight."  Plaintiff contends that the medical records, his responses to treatment, and his documented, persistent attempts to obtain relief of these symptoms supports his allegations and the worsening of his symptoms over time to the extent that he is unable to sustain substantial gainful activity for prolonged periods of time.  (Doc. 13 at 11-15).

---

and hip pain.  In June, August, and October 2011, Dr. Nensey noted that (1) musculoskeletal was negative for arthralgias, edema, joint stiffness, myalgias and gait strength, ROM and atrophy, and (2) range of motion, strength, and tone were normal.  (R. 606, 627, 720).  Dr. Rattes noted Plaintiff's complaints of groin, back, and coccygeal pain.  (R. 503, 510-11, 517, 523, 636, 638).  Dr. Rattes, however, also noted no myalgias, no localized joint stiffness, normal strength, no muscle atrophy, and normal balance.  (R. 385-86, 390-92, 396-98, 402, 404, 407-08, 415-18, 505, 506, 511-12, 517-18, 523-24, 636-37, 712-13).

16

In response, the Commissioner contends that Plaintiff's claim is without merit because Plaintiff fails to argue and show that the ALJ's credibility finding was not supported by substantial evidence.  The Commissioner urges that the ALJ properly applied the pain standard and found that Plaintiff's subjective complaints were not entirely credible.  The Commissioner urges further that the ALJ provided reasons for not fully crediting Plaintiff's complaints, namely, that Plaintiff's complaints were inconsistent with his daily activities and the medical record, and those reasons are sufficiently supported.  (Doc. 15 at 10-13).

In this Circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision.  *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  Such reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole."  *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1562 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

17

As an initial matter, I agree with the Commissioner that this claim fails because Plaintiff wholly fails to challenge the reasons provided by the ALJ for discounting his subjective allegations.  Plaintiff's argument that the record supports his allegations, without any specific challenges to the ALJ's articulated reasons, is simply insufficient.  In any event, the decision reveals that the ALJ properly applied this Circuit's pain standard and articulated adequate reasons for discounting Plaintiff's claim of disabling limitations.

Here, the ALJ found that Plaintiff had medically determinable impairments which reasonably could be expected to cause the symptoms alleged, but not to the degree alleged. (R. 17, 20, 22).  The ALJ found that Plaintiff's allegations were credible only to the extent they were consistent with an RFC for a limited range of light exertional work.  The ALJ articulated several reasons for discounting Plaintiff's subjective allegations:

> Based on the claimant's testimony as to his daily activities, he appears to be less than occasionally limited when compliant with prescribed treatment. . . Although the evidence reveals that claimant has complaints of back pain, chest pain with bypass surgery and stent placement, gastroesophageal reflux disease, pulmonary disease, diabetes mellitus, hypertension, and kidney problems, he has been treated successfully by specialists with necessary surgery, stent placement, and prescribed medication.  The claimant has used a cane for approximately two months due to complaints of back pain, documented by x-ray to be degenerative disc disease of the lumbar spine and a surgical consultation requested by a neurosurgeon.  With compliance with prescribed medication, the claimants symptoms of hypertension, chronic obstructive disease, gastroesophageal reflux disease, renal disease, and diabetes mellitus have been under good control.  The claimant's chest pain, leg pain, and fatigue improved subsequent to his heart surgery and stent placement.  After claimant began using his prescribed CPAP machine daily, he was no longer sleepy during the day.  Of import, once the claimant became compliant with treatment, he showed significant improvement in all areas with less than occasional flare-ups.

*** 

18

> The evidence of record does not show that any physician of record has
> precluded the claimant from work activity.  The claimant's statements
> concerning his impairments and their impact on his ability to work are
> considerably more limited and restricted than is established by the medical
> evidence, his own contemporaneous statements to treating sources, and
> medical source opinions.

(R. 22-23).  These reasons are rationale and are supported by the record.  Despite the

multitude of impairments, the record shows that overall Plaintiff responded well to treatment

and that the bulk of his conditions were managed by medication.  After medication

compliance, Plaintiff frequently reported a lessening or absence of symptoms, and the ALJ is

correct that Plaintiff's subjective testimony is largely inconsistent with the complaints he

made to his doctors.  Although Plaintiff had serious heart-related symptoms, such were

remedied by surgery and stent placement.  *See, e.g.,* (R. 383-84, 395-96, 503-04, 509-10),

515-16, 521-22, 634-35, 710-11).  Similarly, while he was hospitalized due to symptoms

related to GERD, he responded well to treatment and his doctor reported that his GERD was

under excellent control.  *See* (R. 720, 744).  Similarly, Plaintiff's complaints of daytime

sleepiness resolved when he used his CPAP machine nightly.  *See* (R. 556).  Despite

complaints of pain, there is little clinical evidence from any treating doctor to support that the

condition was as limiting as claimed.  Plaintiff reported to Dr. Perrin that his back pain was

better with movement.  (R. 535).  Dr. Perrin noted repeatedly that Plaintiff did not have

shortness of breath or heartburn.  (R. 343, 345, 536, 538, 560, 562, 565, 723, 743).  The ALJ

is also correct that Plaintiff's complaints are undercut by a lack of physical restrictions by his

doctors.  As noted above, that is not an inappropriate consideration.  Lastly, another factor

noted by the ALJ which undercuts Plaintiff's claim of disabling symptoms is that Plaintiff

received unemployment benefits from July 2009 through September 2010 (R. 14), ten months of which Plaintiff also claimed disability and thus an inability to work.  That is not an inappropriate factor to consider when assessing the credibility of a claimant's subjective complaints.  *See Mitchell v. Colvin*, No. 2:12-CV-0811-LSC, 2014 WL 1513274, at *8 (N.D. Ala. Apr. 15, 2014) (finding that the ALJ may consider receipt of unemployment benefits as a factor undermining a claimant's credibility); *Blaisdell v. Colvin*, No. 8:12-cv-1523-T-27AEP, 2013 WL 2285107, at *8 (M.D. Fla. May 23, 2013) (finding it appropriate for an ALJ to consider unemployment benefits when assessing credibility).

In sum, Plaintiff is not entitled to relief on this claim.  He wholly failed to acknowledge or explain why the ALJ's reasons for discounting his complaints were not credible and supported by the medical record.  Here, the substantial evidence supports the ALJ's reasons and rationale for discounting Plaintiff's subjective allegations.

### D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
24th day of June 2014.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.


Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record